

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charley Lockhart
State Treasurer
Austin, Texas

Dear Sir:

Opinion No. 0-3405
Re: To what fund should the State's
share of rentals accruing on
property after the period of
redemption expires and prior
to the time said property is
sold at a foreclosure sale be
paid.

We are in receipt of your letter of April 14, 1941, in which you request the opinion of this department as to the proper fund in which the money you have received from David W. Heath, Assistant County Attorney, El Paso County, El Paso, Texas, should be deposited under the facts as follows:

"We hold a check for $59.37, payable to the Treasurer, State of Texas, which came to us from David W. Heath, Assistant County Attorney, El Paso County, El Paso, Texas, with his letter of April 2, 1941, which reads as follows:

"'Enclosed is a check of James J. Watts Company in the amount of $59.37. This represents the State's share in rentals accruing after the period of redemption expired on property that the City of El Paso, a taxing unit, bought at a foreclosure sale under suit No. 43758, City of El Paso vs. Hills.

"'If you desire any further data on this, please let us know.'

"By letter of April 7, we requested Mr. Heath to let us have any further information or data that he had on the case, including the date on which the foreclosure sale was made, for the purpose of determining which fund of the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

State should receive credit for this money. His answer to our letter of April 7 reads as follows: 'Regarding your letter of April 7, 1941, requesting further information on the James J. Watts Company check for $59.37 for rentals accruing on property sold for taxes after the redemption period had expired and prior to this property being sold to a third party.'"

At the time the property in question in this case was foreclosed under a tax judgment the following Articles controlled such sales and redemptions:

"Article 7288.  Should the tax collector fail to make sale of any real estate for want of a purchaser, he shall bid the same off for the State for the taxes and penalties due, and all costs accruing thereon, and execute a deed to the State; and one deed shall include all tracts of land bid off to the State at such tax sale, and make due return thereof, under such forms and directions as the Comptroller may furnish and direct.  After sale and purchase by the State of any real estate, it shall not be lawful for said collector to levy upon or advertise or sell the same for any remaining or accrued taxes due thereon until the same shall have been redeemed by the owner or is sold by the State.  Said collector shall, on final settlement of his accounts with the commissioners court and the Comptroller, be entitled to a credit for the amount of taxes due the State and county, respectively, for which the lands and lots were bid off to the State.

"Article 7289.  The owner of any lands that may have been conveyed to the State under the provisions of the foregoing article, or his agent, desiring to redeem the same, may do so by depositing with the collector of the county in which the lands were sold double the amount of the purchase money and all accrued taxes thereon, within two years from the date of the deed to the

State; and such collector shall execute a receipt to such owner, or agents, giving therein the amount of money received, and a description of the land so as to identify the same, and sign and seal the same officially; and, upon presentation of such receipt to the Comptroller, he shall execute to the owner a relinquishment under his signature and seal of office, which may be admitted to record in like manner with other conveyances of land.

"Article 7290. In case said land shall not have been redeemed as provided in Article 7289, then the same may be sold as provided in Article 7288."

Article 7328 provided the method of sale by a sheriff after property had originally been bid in by the State and the method of paying the money after said sale. Said Article reads in part as follows:

" . . . . . If any of the land thus sold to the State is not redeemed within the time prescribed by this law, the sheriff shall sell the same at public outcry to the highest bidder for cash at the principal entrance to the court house in the county wherein the land lies, after giving notice of sale in the manner now prescribed for sale of real estate under execution, provided when notice is given by posting notices, one of the said notices shall be posted in a conspicuous place upon the land to be sold. Said notice shall contain a legal description of the land to be sold; the date of its purchase by the State, the price for which the land was sold to the State; that it will be sold at public outcry to the highest bidder for cash, date and place of sale. All sales contemplated herein shall be made in the manner prescribed for the sale of real estate under execution, and the sheriff is hereby authorized, and it is hereby made his duty to reject any and all bids for said land when in his judgment the amount bid is insufficient or inadequate, and in event said bid or bids are rejected the land shall be re-advertised and offered for sale as provided for herein,

but the acceptance by the sheriff of the bid shall be conclusive and binding on the question of the sufficiency of the bid, and no action shall be sustained in any court of this State to set aside said sale on grounds of the insufficiency of the amount bid and accepted. Nothing herein shall be construed as prohibiting the State, acting through the county attorney of the county wherein the land lies, or its Attorney General, from instituting an action to set aside the said sale on the grounds of fraud or collusion between the officer making the sale and the purchaser. The sheriff shall send the amount received from such sale to the State Treasurer after deducting the amount of the county taxes, interest and penalty of the county tax which he shall pay to the county treasurer. The sheriff, in behalf of the State, shall execute a deed conveying title to said property when sold and paid for."

Apparently, under the facts submitted the property was originally bid off to the county, city and state jointly. Unquestionably these taxing units became entitled to the rents accruing from the property after the period of redemption had expired. Unquestionably also the rents were part of the money realized by the state, city and county under the foreclosure sale which was the result of the tax suit originally brought.

It is the opinion of this department that the State's share of the rents thus accruing have been properly forwarded to the State Treasurer just as the State's portion of the money received when the property was finally sold to a private individual has been forwarded to the State Treasurer. We believe same should be handled in the same manner as if it were proceeds of the original tax foreclosure.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Billy Goldberg
Assistant

APPROVED APR 24, 1941

FIRST ASSISTANT
ATTORNEY GENERAL

BG:ej

APPROVED
OPINION
COMMITTEE
BY_____
CHAIRMAN